UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY CHANDLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-02785-SNLJ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Terry Chandler's applications for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Chandler now seeks judicial review. The Commissioner opposes the motion. Chandler did not file a reply. The issues being fully briefed, and for the reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

### I. Procedural History

Chandler's application was denied at the initial determination level. He then appeared before an Administrative Law Judge ("ALJ"). The ALJ found Chandler is not disabled because he can perform work that exists in substantial numbers in the national economy. Chandler then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration. The Appeals Council denied

review. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Chandler now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

## II. Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to

2

a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical

opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. The ALJ's Decision

At Step One, the ALJ found Chandler met the insured status requirements through June 30, 2017, and had not engaged in substantial gainful activity since February 20,

2014. (Tr. 12). At Step Two, the ALJ found Chandler suffers from four severe physical impairments: (1) fibromyalgia; (2) scoliosis; (3) anxiety; and (4) depression. (Tr. 12). At Step Three, the ALJ concluded Chandler does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 13).

Next, in beginning the analysis of Step Four, the ALJ determined Chandler's RFC.[1] The ALJ found that Chandler

> has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he requires a sit/stand option, defined as allowing the individual to briefly stand and stretch every 20 minutes at the work station while remaining on task. He needs to be able to use a cane to ambulate to and from the workstation at the beginning and end of each shift, avoid concentrated exposure to vibration, and all exposure to operational control of moving machinery and unprotected heights. Because of his mental impairments, he is limited to jobs that have only simple, routine, and repetitive tasks, and low stress, defined as occasional decision-making, occasional change in work setting, and no fast-paced production requirements. He can have occasional interaction with public, co-workers, and supervisors.

(Tr. 15). As part of this determination, the ALJ found Chandler's allegations about his symptoms' intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 15). The ALJ recognized Chandler's fibromyalgia, scoliosis, anxiety, and depression, but noted the generally "mild symptoms" identified by treating and examining medical providers, along with routinely normal or otherwise unremarkable objective testing results. The ALJ

---

[1] In the past, there has been some confusion as to when the RFC is determined, which affects who holds the burden of proof in establishing an appropriate RFC. In this Circuit, it has been held that "the RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (*quoting Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000)).

also noted how several providers indicated an improvement in symptom intensity with treatment, with one provider noting an "80% or more improvement of symptomatic pain" as a result of steroid injections. It was further highlighted that Chandler has a global assessment of functioning (GAF) score of 60, which "is consistent with moderate limitations." Overall, the ALJ observed that the record—taken as a whole—demonstrated only mild-to-moderate limitations as a result of Chandler's various impairments. (Tr. 15-18).

With an RFC determination in hand, the ALJ continued on through Step Four to determine whether Chandler can perform his past relevant work given his designated RFC. The ALJ determined that Chandler cannot perform any past relevant work. (Tr. 18).

At Step Five, the ALJ analyzed whether Chandler can successfully adjust to other work. The ALJ noted that if Chandler had the RFC to perform the full range of sedentary work—in other words, if Chandler's RFC matched perfectly with the sedentary work Medical-Vocational Guidelines (the "Grids")—then the Grids would direct a finding of not disabled; but, additional limitations impede Chandler's ability to perform all or substantially all of the sedentary work requirements. Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode Chandler's occupational base to perform sedentary work. The VE testified Chandler is able to perform work as a hand packer, unskilled production worker assembler, and surveillance system monitor, even after considering all of the limitations in Chandler's RFC. (Tr. 19). The ALJ then found these jobs exist in significant numbers in the national economy and concluded Chandler is not disabled. (Tr. 19).

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. Discussion

Chandler argues the RFC formulated by the ALJ is not supported by "some medical evidence" as is "required under the standards" contained in *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000) and *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Specifically, Chandler asserts the ALJ improperly weighed the opinions of his treating

7

medical providers—Dr. Alan Polittle, Dr. Ying Du, and Dr. Rachel Morel. Chandler also argues the hypothetical question posed to the vocational expert "fail[s] to capture the concrete consequences [of his] impairments."

*Singh* and *Lauer* both hold that determination of a claimant's RFC is, ultimately, a medical question. *Singh*, 222 F.3d at 451; *Lauer*, 245 F.3d at 704. And, as such, *Lauer* explains that at least "some medical evidence must support the determination of a claimant's RFC." *Lauer*, 245 F.3d at 704 (internal citations omitted). It is often said that there must be "substantial evidence," which is "less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision." *Stanton v. Commissioner*, 899 F.3d 555, 558 (8th Cir. 2018). Recent case law has clarified that an RFC determination, while a medical question generally, is nonetheless an "administrative assessment" specifically and, therefore, "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd*, 831 F.3d at 1020. Concordantly, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932. What these cases explain, then, is that the ALJ must draw from the medical records as a whole in formulating an RFC; however, it is the ALJ who determines the appropriate weight and credibility given to the medical records in total—records that are often conflicting as between providers or by a single provider over multiple visits.

Simply put, an ALJ need not be absolutely bound by the opinions of treating physicians, as plaintiff seems to urge here. This is because "the ALJ must evaluate the record as a whole." *Bernard v. Colvin*, 774 F.3d 482, 487 (8th Cir. 2014). Indeed, while a

8

"treating physician's opinion is [ordinarily] given controlling weight if it is well-supported by medically acceptable laboratory diagnostics techniques and is not inconsistent with other substantial evidence," an ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id*. For example, the Eighth Circuit has held that an ALJ properly discounted the opinions of a treating physician where relatively benign diagnostic examinations appeared inconsistent with the limitations urged by that physician. *Tuttle v. Barnhart*, 130 Fed.Appx. 60, 62 (8th Cir. 2005). The Eighth Circuit has also affirmed an ALJ's decision to discount a treating physician who appeared to rely primarily on the claimant's subjective complaints rather than on objective criteria, and where the treating physician's own notes were internally inconsistent. *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016). Finally, the Eighth Circuit has cautioned that a treating physician's "medical opinion" is not boundless in scope, such that it appropriate for an ALJ to disregard a physician's conclusion that a claimant "[cannot] be gainfully employed," since such an opinion is not a medical one, but instead an opinion on the application of the statute defining legal disability—a "task assigned solely to the discretion of the Secretary [of Health and Human Services]." *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996).

Here, the ALJ thoroughly explained why he discounted each of the opinions of Dr. Politle, Dr. Ying Du, and Dr. Rachel Morel. For Dr. Politle, the ALJ stated that he "typically observed mild symptoms" and noted plaintiff had even told him plaintiff was

capable of taking care of himself, doing household chores, managing money, driving, and socializing with others. Thus, while Dr. Polittle indicated plaintiff could not work due to anxiety, the ALJ found such assessments are "not supported by [Polittle's] own observations." (Tr. 15-16).

The ALJ discounted the opinions of Dr. Du for similar reasons. Dr. Du found that plaintiff could not work because plaintiff's musculoskeletal pain (fibromyalgia) was so bad that it totally interfered with his ability to concentrate at work. Yet, the ALJ noted unremarkable x-ray and MRI results, as well as Dr. Du's own notes that indicated improvement with treatment. Finally, the ALJ highlighted that "there is no evidence of objective testing by [Dr. Du] that would translate or be compatible with an assessment regarding concentration … [at] work." (Tr. 16).

As for Dr. Morel, she found plaintiff would be unable to do any kind of competitive work—finding his function to be very limited. Yet, again, the ALJ pointed out that "there are only three treatment records [involving Dr. Morel] in this file dated from November 13, 2015 through April 5, 2016" and it was highlighted that "[Dr. Morel's] treatment records are rather benign with generally unremarkable mental status examinations." (Tr. 17).

These three doctors were contrasted with the record as a whole. One examining doctor observed "no fibromyalgia tender points" and indicated that plaintiff told her he was responding well to hydrocodone but that "his doctor stopped prescribing it" (plaintiff had been encouraged by doctors on other occasions to stop using opioids—such as hydrocodone—and, instead, increase physical activity and exercise). (Tr. 497-501, 546)

10

Another doctor who performed a series of psychological evaluations for anxiety and depression found plaintiff had only "moderate limitations." In those evaluations, plaintiff was determined to have a global assessment of function (GAF) score of 60, which generally indicates moderate impairment. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 931 (citing the Diagnostic and Statistical Manual of Mental Disorders IV and stating "the history of GAF scores between 52 and 60, taken as a whole, indicate [claimant] has moderate symptoms or moderate difficulty in social or occupational functioning"). Finally, the ALJ noted a third doctor's review of the records who indicated only "moderate limitations in social functioning." As a whole, the ALJ found the record reflected only mild-to-moderate limitations and not the sort of disabling limitations urged by plaintiff. (Tr. 171-173; 183-185).

While it is not the job of this Court to re-weigh the evidence, *McNamara*, 590 F.3d at 610, the Court has nonetheless reviewed the record to determine if the ALJ's decision is sufficiently supported.

Based on this review, this Court finds first that the ALJ appropriately discounted plaintiff's three treating physicians. Dr. Politle, for example, assessed plaintiff with mostly mild-to-moderate impairments. (Tr. 431). Nonetheless, Dr. Politle summarily stated that anxiety would likely cause plaintiff trouble working. (Tr. 430). It is not altogether clear how this jump between assessment and conclusion was made. Moreover, Dr. Politle's conclusion—however reached—was narrowly limited to plaintiff's perceived inability to work in the medical rehabilitation field (apparently over a concern about repeated public interaction); thus, Dr. Politle's conclusion would seem to have

minimal import in any event as it relates only to a single career field. (Tr. 430).
Nonetheless, to the extent public anxiety was Dr. Polittle's chief concern (it is the only impairment noted by him as being severe) the ALJ appropriately captured this concern in the RFC determination by adding a "low stress" work component with only "occasional interaction with public, co-workers, and supervisors."

As another example, it does appear that plaintiff only met with Dr. Morel on a handful of occasions—as was noted by the ALJ. Despite this, she indicated on July 20, 2016, that plaintiff could not work in any environment because of his "panic" and "low energy." These observations seem inconsistent when juxtaposed with Dr. Morel's previous observations just a few months earlier that plaintiff was "cooperative," "well groomed," had "logical" and "goal-directed" thought processes, denied suicidal ideations, had "fair" insight and judgment, "normal" attention, intact memory, and average intellect. In fact, on the three visits she had with plaintiff, Dr. Morel described plaintiff's anxiety and mood disturbance as merely "moderate" and improved through the use of medication. (Tr. 510-516).

Second, the record, when viewed as a whole, does demonstrate to a reasonable degree of certainty that plaintiff suffers from only moderate physical and mental impairments that are often well-controlled through medication. *See, e.g., Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); *see also Stanton*, 899 F.3d 558. For example, like Dr. Morel, Dr. Kirmach Natani examined plaintiff and noted largely normal appearance and behavior. However, Dr. Natani also took the additional step of

performing a series of cognitive tests with plaintiff, which were deemed unremarkable. In addition, Dr. Natani assessed plaintiff with a GAF score of 60 (moderate impairment) and found that, while plaintiff has "no friends" and "no girlfriend," he was nonetheless capable of socializing with his family and had previously worked a number of jobs successfully that were sidelined only after "having back problems in 2011."(Tr. 507-509). And—on the issue of plaintiff's back pain—Dr. Shapiro, who treated plaintiff for more than a year, repeatedly indicated success with steroid injections (lowering pain, on average, at or below a subjective score of 4-out-of-10) and commented that plaintiff "received 80% or more improvement of symptomatic pain as well as being able to perform tasks that previously [he] could not do." (Tr. 564, 571, 573, 576, 578, 580, 583, 587, 589, 593). These examples, along with other records, rebuff any perceived indication that plaintiff is disabled.

Finally, plaintiff contends that, because the ALJ erred in formulating an appropriate RFC which did not "capture the concrete consequences" of his impairments, this resulted in a faulty hypothetical being proposed to the vocational expert. "A hypothetical question is properly formulated if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). Thus, so long as the ALJ's decision is supported by substantial evidence, he or she is free to include only those impairments and limitations that are deemed credible. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006). This argument is, consequently, redundant with plaintiff's attack on the evidentiary sufficiency of the ALJ's RFC determination.

In sum, the record—on balance—indicates only moderate physical and mental impairments, which the ALJ appropriately factored into the RFC determination. While plaintiff argues the ALJ "fail[ed] to point to the evidence" he relied upon, this Court finds the ALJ, in fact, appropriately highlighted a number of inconsistencies in the total record to partially discredit the three physicians discussed above—even if he did not cite to each inconsistency page-by-page. Moreover, the ALJ's decision appears to this Court to be amply supported by the record as a whole, satisfying the standards of *Singh* and *Lauer* that there be at least "some medical evidence" in support. *See Singh,* 222 F.3d at 451; *Lauer*, 245 F.3d at 704; *see also Stanton*, 899 F.3d 558 (finding that there must be "substantial evidence," which is "less than a preponderance, but enough that a reasonable mind would find it adequate to support the ALJ's decision").

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

So ordered this 5th day of November 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE